**In re Tyson Litrell LEONARD, Debtor.**

**No. 14 B 01509.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 4, 2014.

Jon K. Clasing, Timothy K. Stanton, Geraci Law LLC, Chicago, IL, for Debtor.

David J. Frankel, Sorman & Frankel, Ltd., Chicago, IL, for Creditor.

### OPINION ON MOTION OF AMERICREDIT TO ANNUL STAY AND CO–DEBTOR STAY (Docket No. 15)

JACK B. SCHMETTERER,
Bankruptcy Judge.

In this Chapter 13 case, filed by the Tyson Litrell Leonard ("Debtor") on January 20, 2014, Americredit Financial Services, Inc. d/b/a GM Financial (hereinafter "Creditor") has moved to annul the automatic stay and Co–Debtor stay.

These are the undisputed relevant facts:

Creditor is a secured creditor of Debtor and his spouse is co-obligor with respect to debt secured by lien on a 2006 Mazda 6 auto. On January 16, 2014, four days prior to bankruptcy, the vehicle was impounded by Chicago police. After the Debtor's bankruptcy filing, Debtor would have had the right under the ruling in *Thompson v. General Motors Acceptance*, 566 F.3d 699 (7th Cir.2009) to request return of the vehicle, the withholding of which post bankruptcy was treated in *Thompson* as a violation of the automatic bankruptcy stay.

Debtor and his bankruptcy counsel did not notify the Chicago auto pound about the bankruptcy filing. If they had done so, it is possible that *Thompson* would not have required immediate return of the vehicle. The police had placed a special hold on the vehicle because among the traffic charges then pending against he Debtor was one relating to marijuana found in the vehicle. To the extent the City could argue that it was exercising its power to enforce the criminal laws until the local court considered that charge, *Thompson* might well not have been applicable because exercise of the power to enforce criminal laws is not subject to the bankruptcy stay. 11 U.S.C. § 362(b)(1). However, no request for return of the car was made and that issue did not arise. Debtor testified that he did not have the $1500 he understood to be required to redeem the auto from the pound so did not apply to do so; nor did his bankruptcy counsel seek to do so.

Concerned lest its auto collateral be disposed of by the auto pound in absence of anyone releasing it, on February 8, 2014, in order to protect its collateral this Creditor paid the $1500 to the auto pound and took possession of the vehicle. The vehicle remains in storage pending decision on the instant Motion to Annul Stay.

The stay Motion was filed by Creditor February 14, 2014, and noticed for presentment in court on February 26, 2014. Because no proof of insurance on the subject vehicle had been delivered by Debtor, the Motion was continued to February 27, 2014, on which date the Creditor' counsel represented he had just been delivered proof of such insurance. On that date, the Debtor also produced proof that (a) he had not been charged with driving under influence of marijuana and (2) he had on or about February 26, 2014, gone to court on the driving charges and all were "stricken on leave to reinstate," a state court proce-

dure that disposes of a charge subject to the rarely exercised power of the prosecution to reinstate the charge.

Under these circumstances, Creditor's counsel argues that the Creditor is not adequately protected because it was forced to pay $1500 and storage charges to redeem and protect the vehicle; the value of this eight-year old car is depreciating; Debtor lacks equity in the vehicle; and the auto is not necessary to an effective organization. The Debtor needs the vehicle to get to work, but no evidence was offered as to the vehicle's condition or rate of depreciation. The Creditor's allegations of its present value ($7,700) and the amount of debt owed on that security ($8,960.23) were not disputed, so the Debtor lacks equity in the vehicle.

Debtor proposes to perform his obligations owed to Creditor through his Chapter 13 Plan on file. Debtor's Schedules I and J show that he has been employed 12 years as a custodian for St. Bernard Hospital in Chicago, and that after all expenses his net monthly income is $472.25. His proposed Plan dated January 17, 2014, offers a monthly Plan payment of $470, leaving only $448.85 each month after payment of Chapter 13 trustee fees. Apart from payment each month out of the Plan payment toward attorney's fees of $4,000, Debtor's plan has provided for the allowed secured claim to be paid at an unknown interest rate, a total of $9,926 through Plan, referring to the debt due to this Creditor, scheduled at $8,938.

The parties have not computed for the Court the net amount the Debtor's Plan would pay this Creditor each month if the Plan is confirmed, nor has either party offered evidence as to monthly amount of depreciation of the subject vehicle.

### DISCUSSION

■ While *Thompson* requires a creditor holding collateral to return it upon request and notice of a debtor's bankruptcy filing, upon filing of a creditor's motion to modify or annul the stay other issues are presented. Since Debtor lacks equity and the aging auto is depreciating in value, Debtor must adequately protect the security interest of the Creditor. 11 U.S.C. § 362(d)(1). This must be done by monthly payments that can be no less than the amount of depreciation. Debtor has the burden of showing evidence that its monthly Plan payment will be sufficient to do that.

■ Accordingly, an evidentiary hearing will be held as soon as possible to determine whether Debtor's Plan adequately protects the Creditor's interest. If that is not proven, the stay will be annulled. If it is proven, the Motion will be denied and the car must be returned.

■ Since the Debtor made no effort to obtain release of the auto from the auto pound, the act of Creditor in paying the fee to do so can be viewed as an unintentional stay violation at the time, but not in violation of *Thompson;* rather it was a necessary act that preserved both the Debtor's interest in the vehicle not being destroyed or sold at the same time that it protected the Creditor's investment. However, it must be decided as part of the forthcoming hearing whether (if adequate protection is otherwise shown) the $1500 and storage charges paid by Creditor to release and protect the car from the auto pound should be added to the debt to be paid through the Plan.